Samuel Brown (Ark. Bar No. 2020210)
Sanford Law Firm, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
(501) 500-9744
samuel@sanfordlawfirm.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| Todd Heichel, Rudy Castro, Justin Garmendia, Joshua Holgate and Randi Pitts, Each Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Tri City Transport, LLC, SWWOOP, LLC, and Michael Butler,<br><br>Defendants. | NO. 2:22-cv-1513-PHX-SMM<br><br>**BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** |

### I.  INTRODUCTION

Plaintiffs Todd Heichel, Rudy Castro, Justin Garmendia, Joshua Holgate and Randi Pitts, each individually and on behalf of all others similarly situated (collectively, "Plaintiffs") are entitled by operation of law to a judgment by default against Defendants Tri City Transport, LLC, SWWOOP, LLC, and Michael Butler (collectively, "Defendant" or "Defendants"), as a result of Defendants' failure to file any responsive pleading herein within the time allowed by the Federal Rules of Civil Procedure. As is

1

more fully set forth herein below, Plaintiffs have alleged facts which establish a basis for thier claims relating to violations of the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA"), A.R.S. § 23-352, and A.R.S. § 23-363 ("the Arizona statutes"), and liquidated damages. Also, as more fully set forth herein below, Plaintiffs have established that they are entitled to damages in the amount of $338,736.89, which includes damages for unpaid minimum and overtime wages, as well as liquidated damages. Plaintiffs are also entitled to an award of costs of $1,312.35 and attorneys' fees of $18,740.75.

## II. PROCEDURAL BACKGROUND

On September 8, 2022, Plaintiffs filed their Original Complaint—Collective Action against Tri City Transport, LLC, SWWOOP, LLC, and Michael Butler (collectively "Defendant" or "Defendants"). ECF No. 1. Plaintiffs served Defendants Tri City Transport, LLC, and Defendant SWWOOP, LLC, with the Complaint and Summons via Certified Mail on June 13, 2023. ECF No. 30. Defendants Tri City Transport, LLC, and SWWOOP, LLC, did not file or serve an Answer or Motion to Dismiss in accordance with Rule 12(a)(1) of the FRCP. Upon Plaintiffs' motion, the clerk entered Defendants Tri City Transport, LLC, and SWWOOP, LLC's default pursuant to Rule 55 of the FRCP on August 2, 2023. ECF No. 32. Plaintiff served Defendant Michael Butler by publication, which ran consecutively during the weeks of November 17, 2023, November 24, 2023, December 1, 2023, and December 8, 2023. ECF No. 42. Defendant Michael Butler did not file or serve an Answer or Motion to Dismiss in accordance with Rule 12(a)(1) of the FRCP. Upon Plaintiffs' motion, the

clerk entered Defendant Michael Butler's default pursuant to Rule 55 of the FRCP on February 23, 2024. ECF No. 43.  Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs request that this Court enter default judgment against Defendants as set forth herein below.

### III.   DEFAULT JUDGMENT STANDARD

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, following the entry of a party's default by the clerk the Court may enter a default judgment against the defaulting party upon application by the non-defaulting party. Fed. R. Civ. P. 55. Federal Rule of Civil Procedure ("FRCP") 55(b)(2) permits a court, following a default by a defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. *Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one.")).

The Ninth Circuit has enumerated several factors which the court may consider in exercising its discretion as to whether an entry of default judgment is proper: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim and the sufficiency of the complaint; (3) the sum of money at stake; (4) the possibility of dispute concerning material facts; (5) whether default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In

applying this discretionary standard, the factual allegations contained in the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.1987).

## IV. BRIEF FACTUAL BACKGROUND

As noted above, on motion for default judgment, the factual allegations contained in Plaintiffs' Complaint must be taken as true. Plaintiffs are all residents of Arizona and were during the relevant time period. Compl. ¶¶ 7-11 ECF No. 1. Separate Defendants Tri City Transport, LLC, and SWWOOP, LLC, are both domestic limited liability companies. *Id*. at ¶ 12, 14. Separate Defendant Michael Butler is an individual and resident of Arizona. *Id*. at ¶ 16. Upon information and belief, the revenue generated by Tri City Transport, LLC, and SWWOOP, LLC, was merged and managed in a unified manner, and Defendants operate as a single enterprise in which Separate Defendant Micheal Butler is an operating employer. *Id*. at ¶ 18-21. Defendants are a business subject to the FLSA because they had at least two employees who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and who regularly used instrumentalities of interstate commerce in carrying out their job duties. *Id*. at ¶ 19.

Defendants employed Plaintiffs as Drivers and paid them per mile driven. *Id*. at ¶ 34. Defendant determined the number of hours worked by Plaintiffs, the manner in which Plaintiffs performed their job duties, and their schedule. *Id*. at ¶ 23. Defendants did not pay Plaintiff a rate at or close to minimum wage per hour for work performed. *Id*. ¶ 34. Defendants also failed to reimburse Plaintiffs for mileage expenses at the

4

standard IRS business mileage rate. *Id*. ¶ 62. Defendants willfully violated the provisions of 29 U.S.C. §§ 206 and 207 by failing to pay Plaintiffs one and one-half times their regular rate for all hours worked over forty in a week and paying an hourly rate that fell below the federal minimum wage. *Id*. at ¶¶ 40-53.

## V. ARGUMENT

**A. Plaintiffs have established that Defendants violated the minimum wage and overtime provisions of the FLSA and the Arizona statutes and are entitled to damages.**

Plaintiffs have established that Defendants violated the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., and the Arizona statutes and are entitled to damages for all back wages and/or unpaid overtime compensation. Specifically, Defendants did not pay Plaintiffs a regular or overtime rate sufficient to meet the federal wage requirements and did not pay Plaintiffs all wages due when their employments were terminated. Because Defendants violated the regular rate and overtime provisions of the FLSA, Plaintiffs are entitled to damages for all unpaid back wages and unpaid overtime compensation.

**1. Plaintiffs' declarations sufficiently prove their damages.**

"An employee who brings suit under [29 U.S.C. 216(b)] of the [FLSA] for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686–87 (1946). However, based on the purposes of the FLSA, the employee's burden of proof is relaxed where the employer has failed to keep accurate records containing the information

required under the FLSA. *Id*. at 687–88. Plaintiffs are entitled to damages for all unpaid compensation within the statute of limitations. Plaintiffs Todd Heichel, Rudy Castro, Justin Garmendia, Shavale Evison, Roscoe Butterfield, Karly Hernandez, Domingo Limon, Cassidy Dorius, and Billy Durbin have each submitted sworn declarations regarding their uncompensated time that is in line with the allegations made in the Complaint.

   i.   <u>Plaintiffs' use of the IRS mileage rate to calculate damages is appropriate</u>.

Plaintiffs' calculations are based on their own personal recollection of their hours worked and miles driven multiplied by the standard IRS mileage rate to put a dollar amount on the wear and tear put on their vehicle. The burden of keeping accurate employment records is on the employer rather than the employee. *Mt. Clemens Pottery Co.*, 328 U.S. at 686–88. Thus, it is Defendants' burden to keep records of Plaintiff's actual mileage driven. *See id*. However, recognizing that keeping accurate mileage records may be unduly cumbersome, many courts have held that employers may reimburse a "reasonable approximation" of actual vehicle expenses. *See, e.g., Cornish v. Deli Mgmt., Inc.*, Civil Action No. WMN-16-672, 2016 U.S. Dist. LEXIS 141209, at *5-6 (D. Md. Oct. 12, 2016) (*quoting Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1285-86 (D. Kan. 2010)).

Here is where an unfortunate anomaly resides in the current state of the law: it is Plaintiffs' burden to demonstrate that Defendant's vehicle expense reimbursement rate was unreasonable, yet Defendant's burden to keep accurate records (on which Plaintiffs'

proof lies) has been abrogated by the determination that a "reasonable approximation" suffices. Thus, to prove a kickback violation, employees must prove that their vehicle expenses caused their effective hourly rates to fall below the statutory minimum without the benefit of actual mileage records. This is particularly impossible in a case such as this, where even the methodology of calculating the reimbursement is unattainable through discovery because Defendant never entered the case. Accordingly, many courts have recognized the futility in requiring plaintiffs in the kickback context to prove a reimbursement rate was unreasonable without the benefit of a neutral, standard rate.

From this context enters the IRS standard mileage rate, not as the end-all measurement of reasonableness, but as a basis on which Plaintiff may provide an estimation of vehicle expenses absent any actual data on which to rely (data that again, is not his burden to maintain). In *Hatmaker v. PJ Ohio, LLC*, the court noted that in general, "employers are not permitted to 'guess' or 'approximate' a minimum wage employee's expenses for purposes of reimbursing the expenses" because this practice "would result in some employees receiving less than minimum wage, contrary to the FLSA mandate." No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790, at *8 (S.D. Ohio Nov. 5, 2019). The court acknowledged that maintaining accurate records of every employee's actual mileage is "cumbersome," but found that employers paying at or near the minimum wage "fault line" failed to reimburse those actual expenses at their own risk because "when actual expenses have not been maintained, the IRS mileage rate is used to determine minimum wage compliance." *Id*. at *9–13 (emphasis added).

Use of the IRS rate to determine minimum wage compliance meets the remedial goals of the FLSA in providing both employees and employers with "clear rules to follow." *Id*. at *16. The rate is determined by a "neutral arbiter," the IRS, which sets the rate such that "it favors neither employers nor employees." *Id*. *17. "Employers, employees, and courts can precisely determine whether an employer is complying with the employer's minimum wage obligations" with "relatively low litigation costs." *Id*. This position is consistent with the FLSA's mandate that employers maintain records of their employees' "wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c).

Plaintiffs' use of the IRS mileage rate to prove their damages resolves the tension in basing damages off records to which Plaintiff does not have access. Because the duty to maintain accurate records lies with the employer, Plaintiffs cannot provide actual expenses and therefore must rely on the IRS rate to demonstrate that Defendant's reimbursement approximation was unreasonable and resulted in an illegal kickback. *See* DOL Handbook § 30c15 (As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" **may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes**.") (bold emphasis added).

ii. <u>The facts outlined in Plaintiffs' declarations sufficiently prove their damages</u>.

Plaintiffs' declarations filed in support of this Motion provides a factual basis

demonstrating the extent of their damages.

Plaintiff Todd Heichel states that he was paid $500.00 per hour week for his time making deliveries, and that he spent approximately 72 hours per week making deliveries. Ex. 1, Decl. Todd Heichel ¶ 6, 10. Accordingly, Plaintiff received roughly $6.94 per delivery hour.

Plaintiff Heichel was not paid any mileage reimbursement. *Id*. at ¶ 9. Plaintiff Heichel estimates that he made around 2 deliveries per hour and drove roughly 13 miles round trip per delivery, putting 1,872 miles on his vehicle per week. Based on the IRS standard mileage rate, which, as outlined above, is the only mechanism available to Plaintiff Heichel to show that Defendant's reimbursement rate was unreasonable, Plaintiff Heichel should have received $1,095.12 per week in mileage reimbursement.

Because Plaintiff Heichel's effective hourly rate was below the Arizona minimum wage, simple math shows that Plaintiff Heichel is owed $8,587.87 in unpaid minimum wages and $1,228.80 in unpaid overtime. *See* Damages Calculations attached to Plaintiff Heichel's Declaration.

Plaintiff Rudy Castro states that he was paid $1.25 per mile driven, drove approximately 500 miles per week, and that he spent approximately 60 hours per week making deliveries. Ex. 2, Decl. Rudy Castro ¶ 5, 9. Accordingly, Plaintiff Castro received roughly $10.41 per delivery hour.

Plaintiff Castro was not paid any mileage reimbursement. *Id*. at ¶ 10. Based on the IRS standard mileage rate, which, as outlined above, is the only mechanism available

to Plaintiff Castro to show that Defendant's reimbursement rate was unreasonable, Plaintiff Castro should have received $1,292.50 per week in mileage reimbursement.

Because Plaintiff Castro's effective hourly rate was below the Arizona minimum wage, simple math shows that Plaintiff Castro is owed $9,544.50 in unpaid minimum wages and $1,152.00 in unpaid overtime. *See* Damages Calculations attached to Plaintiff Castro's Declaration.

Plaintiff Justin Garmendia states that he was paid $600 per week as gas reimbursement and nothing for wages, drove approximately 1,200 miles per week, and that he spent approximately 80 hours per week making deliveries. Ex. 3, Decl. Justin Garmendia ¶ 7, 10. Plaintiff Garmendia's mileage reimbursement was effectively a flat rate of pay for all hours worked. *Id*. at ¶ 7, 11. Accordingly, Plaintiff Garmendia received roughly $7.50 per delivery hour.

Because Plaintiff Garmendia's effective hourly rate was below the Arizona minimum wage, simple math shows that Plaintiff Garmendia is owed $8,192.00 in unpaid minimum wages and $2,048.00 in unpaid overtime. *See* Damages Calculations attached to Plaintiff Garmendia's Declaration.

Plaintiff Shavale Evison states that she received one payment of $800 for her work and that she spent approximately 60 hours per week making deliveries. Ex. 4, Decl. Shavale Evison ¶ 6, 8. Accordingly, Plaintiff Evison received nothing for most of the weeks she worked and an effective hourly rate that was slightly above the minimum wage for the one week she was paid.

Because Plaintiff Evison's effective hourly rate was $0.00 during 9 of her 10 weeks of employment, simple math shows that Plaintiff Evison is owed $6,975.00 in unpaid minimum wages and $1,290.50 in unpaid overtime. *See* Damages Calculations attached to Plaintiff Evison's Declaration.

Plaintiff Roscoe Butterfield states that he drove approximately 1,000 miles per week, worked approximately 33 hours per week, and was paid nothing for his work during his five weeks of employment. Ex. 5, Decl. Roscoe Butterfield ¶ 6, 9.

Plaintiff Butterfield was not paid any mileage reimbursement. *Id*. at ¶ 10. Based on the IRS standard mileage rate, which, as outlined above, is the only mechanism available to Plaintiff Butterfield to show that Defendant's reimbursement rate was unreasonable, Plaintiff Butterfield should have received $625.00 per week in mileage reimbursement.

Because Plaintiff Butterfield was not paid at all for his work, simple math shows that Plaintiff Butterfield is owed $5,237.00 in unpaid minimum wages. *See* Damages Calculations attached to Plaintiff Butterfield's Declaration.

Plaintiff Karly Hernandez states that she was paid $1.00 per mile driven while a client was in the care for the first three months of her employment and then $1.10 per mile thereafter. However, Plaintiff Hernandez was not paid at all for her last five weeks of work. Ex. 6, Decl. Kathy Hernandez ¶ 6-7.

Because Plaintiff Hernandez was not paid at all for her work during her last five weeks of employment, simple math shows that Plaintiff Hernandez is owed $1,856.00

in unpaid minimum wages. *See* Damages Calculations attached to Plaintiff Hernandez's Declaration.

Plaintiff Domingo Limon states that he was paid $1.10 per mile driven, drove approximately 2,800 miles per week, and that he spent approximately 98 hours per week making deliveries. Ex. 7, Decl. Domingo Limon ¶ 5, 9-10.

Plaintiff Limon's effective hourly rate was above the Arizona minimum wage. However, Plaintiff Limon was not paid an overtime premium for his hours worked over 40. As such, Plaintiff Limon is owed $17,052.00 in unpaid overtime. *See* Damages Calculations attached to Plaintiff Limon's Declaration.

Plaintiff Cassidy Dorius states that she was paid $.80 per mile driven, drove approximately 1,800 miles per week, and that she spent approximately 80 hours per week making deliveries. Ex. 8, Decl. Cassidy Dorius ¶ 5, 9. Plaintiff Dorius also states that she was not paid at all for her last week of employment. *Id*. at ¶ 13.

Plaintiff Dorius was not paid any mileage reimbursement. *Id*. at ¶ 10. Based on the IRS standard mileage rate, which, as outlined above, is the only mechanism available to Plaintiff Dorius to show that Defendant's reimbursement rate was unreasonable, Plaintiff Dorius should have received between $1,053.00 and 1,125.00 per week in mileage reimbursement.

Because Plaintiff Dorius's effective hourly rate was below the Arizona minimum wage when factoring in her unpaid mileage reimbursement, simple math shows that Plaintiff Dorius is owed $18,170.88 in unpaid minimum wages and $6,400.00 in unpaid

overtime. *See* Damages Calculations attached to Plaintiff Dorius's Declaration.

Plaintiff Billy Durbin states that he was paid $1.00 per mile driven, drove approximately 750 miles per week, and that he spent approximately 60 hours per week making deliveries. Ex. 9, Decl. Billy Durbin ¶ 5, 8. Plaintiff Durbin also states that he was not paid at all for his last 10 week of employment. *Id*. at ¶ 11.

Plaintiff Durbin was not paid any mileage reimbursement. *Id*. at ¶ 10. Based on the IRS standard mileage rate, which, as outlined above, is the only mechanism available to Plaintiff Durbin to show that Defendant's reimbursement rate was unreasonable, Plaintiff Durbin should have received between $438.75 and 468.75 per week in mileage reimbursement.

Because Plaintiff Durbin's effective hourly rate was below the Arizona minimum wage, simple math shows that Plaintiff Durbin is owed $21,465.75 in unpaid minimum wages and $3,712.00 in unpaid overtime. *See* Damages Calculations attached to Plaintiff Durbin's Declaration.

**2.     Plaintiffs are entitled to liquidated damages.**

Plaintiffs are entitled to liquidated damages regarding their minimum wage judgment. When an employer is found to have violated the overtime payment requirements of the FLSA, the employer "shall be liable" to the employee for liquidated damages in an amount equal to the amount of overtime compensation owed. 29 U.S.C. § 216. As set forth above, liquidated damages are not penal in nature, but represent compensation to the employee for otherwise obscure and difficult to prove damages.

Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945). Subject to the discretion of the Court, an employer may be wholly or partially relieved of his duty to pay liquidated damages only if the employer proves "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. § 260.

An employer who violates the FLSA carries the burden of proving its claim of good faith and reasonable grounds, and the employer must show that it acted in both objective and subjective good faith, which requires that an employer demonstrate that it "took affirmative steps to ascertain the [FLSA's] requirements but nonetheless violated its provisions." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). Liquidated damages are "the norm" where an FLSA violation is found. *Id*. Whether to award liquidated damages is a question for the Court, not the jury. *Kanatzer v. Dolgencorp. Inc.*, 2010 U.S. Dist. LEXIS 67798 at *24 (E.D. Mo. July 8, 2010).

The FLSA directs that liquidated damages in an amount equal to any judgment awarded on a minimum wage or overtime pay violation claim be awarded if the employer fails to carry its burden of proving that it acted in good faith and with reasonable grounds for violating the FLSA.29 U.S.C. § 216(b). Because Defendants failed to meet their burden of proving that they acted in objective and subjective good faith, Plaintiffs should be awarded liquidated damages equal to any amount of unpaid overtime awarded.

**B.   Plaintiffs have established a basis for an award of reasonable attorneys' fees and costs in the amount of $20,053.10.**

The FLSA mandates that an employee who is awarded damages against his or her employer for minimum wage or overtime violations of the FLSA be awarded a reasonable attorney's fee and costs incurred in having pursued the case. Specifically, 29 U.S.C. § 216(b) states that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fees to be paid by the defendant, and costs of the action." (emphasis added); *see also Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 603 F.3d 888, 893 (11th Cir. 2010) ("The FLSA is a mandatory fee statute, and we have not recognized any exception to it."). Congress enacted the fee-shifting provision of the FLSA "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Alvarez v. Catered Fit Corp.*, No. 16-62262, 2018 U.S. Dist. LEXIS 21748, at *6 (S.D. Fla. Feb. 8, 2018) (quoting *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Plaintiffs have established that Defendants violated the minimum and overtime wage provisions of the FLSA. Pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 54, Plaintiffs request that this Court accept the amounts of costs and attorney's fees incurred by Plaintiffs submitted with the Plaintiffs' Motion for Default Judgment.

Compensating plaintiffs' attorneys, who act as private attorneys general lending their unpaid work to society, furthers Congress's public policy goal under the FLSA, which is to protect workers from unfair labor practices. *See Medrano v. Mi Colombia Bakery, Inc.*, No. 11-23916-CIV-MOORE/TORRES, 2013 U.S. Dist. LEXIS 60135, at

1  \*3 (S.D. Fla. Jan. 10, 2013) ("Indeed, FLSA was designed to rectify and eliminate 'labor
2  conditions detrimental to the maintenance of the minimum standard of living necessary
3  for health, efficiency, and general well-being of workers.'" (quoting 29 U.S.C. § 202(a)).
4  In awarding fees, "[t]he relevant issue…is not whether hindsight vindicates an
5  attorney's time expenditures, but whether, at the time the work was performed, a
6  reasonable attorney would have engaged in similar time expenditures." Wooldridge v.
7  Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990).

8      Plaintiffs seeks $18,740.75 in attorneys' fees. Plaintiffs' counsel kept
9  contemporaneous records of their hours worked in this case. *See* Exhibit 10, Declaration
10 of Josh Sanford (hereinafter "Decl. Sanford") ¶ 24, 333, Exhibit 11, Billing Spreadsheet.
11 Time expended in this case included many concerted efforts by Plaintiffs' counsel to
12 serve Defendants.

13     Section 216(b) of the FLSA also provides for an award of costs to a prevailing
14 plaintiffs. 29 U.S.C. § 216(b); see also Rule 54(d) (allowing an award of costs to a
15 prevailing party). Costs recoverable under Rule 54(d) are identified in 28 U.S.C. § 1920.
16 "Under the FLSA, however, 'costs include reasonable out-of-pocket expenses beyond
17 those normally allowed under Rule 54(d) and 28 U.S.C. § 1920.'" *Hendricks v. Inergy,*
18 *L.P.*, 2014 U.S. Dist. LEXIS 6044, at \*22 (E.D. Ark. Jan. 6, 2014) (internal editing
19 marks omitted); *Shorter v. Valley Bank & Trust Co.*, 678 F. Supp. 1518 1523, 30 WH
20 Cases 334 (D. Kan. 1991); *Walton v. United Consumers Club*, 786 F. 2d 303, 316, 27
21 WH Cases 962 (7th Cir. 1986). "Reimbursement for travel, meals, lodging,
22

1  photocopying, long-distance phone calls, computer legal research, postage, courier
2  service, mediation, exhibits, document scanning, and visual equipment are the types of
3  litigation expenses that are recoverable under the FLSA as part of an attorneys' fee
4  award." *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 630 (W.D. Tex. 2015).
5         Plaintiffs seeks $1,312.35 in costs. *See* Decl. Sanford ¶ 34, Exhibit 12, Costs
6  Invoice. Costs were necessarily incurred, and the services giving rise to the costs were
7  actually and necessarily performed. See 28 U.S.C. § 1924; Decl. Sanford ¶ 34–35. Each
8  cost is described sufficiently to demonstrate that the cost was necessary. Accordingly,
9  Plaintiffs request an award of all costs.

**C.     On balance, the Eitel factors favor the entry of default judgment.**

As to the first factor, denying Plaintiffs' Motion for default judgment would make little sense since Defendants have not defended against Plaintiffs' causes of action. The court would hear and review the same evidence it has before it now if Plaintiffs were required to prove up their case at an uncontested trial. For that reason, Plaintiffs would be prejudiced in the form of further delay and expense if the court were to deny the present Motion. This factor weighs in favor of default judgment. As to the second and third factors, Plaintiffs' substantive claims appear facially meritorious, and the Complaint is sufficient to support a judgment. Additionally, Plaintiffs have stated relevant authority pursuant to which the court may provide relief. These factors also weigh in favor of default judgment. As to the fourth factor, the sum of money at stake is not significant. Also, Plaintiffs seeks to recover damages as well as attorneys' fees and costs. Both are permitted in this case. Furthermore, the amount has not been

disputed. All things considered; the amount requested does not weigh strongly against entry of default judgment. As to the fifth factor, there is no dispute of material fact. Indications there is a dispute of material fact can weigh against entry of default judgment. But here, no Defendant has disputed any of Plaintiffs' factual contentions. For the sixth factor, it is unlikely that default was the result of excusable neglect. After this action was filed, Defendants were served and failed to respond. This factor, therefore, weighs in favor of default judgment. Finally, the seventh factor weighs in favor of default judgment because although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate. Thus, the general policy in favor of merits decisions is outweighed by the specific considerations made in this case. Based on the foregoing, the Motion for Default Judgment against Defendants Tri City Transport, LLC, SWWOOP LLC, and Michael Butler should be granted.

## VI.  CONCLUSION

Plaintiffs respectfully request that the Court enter judgment against Defendants Tri City Transport, LLC, SWWOOP LLC, and Michael Butler, as set forth above.

DATED this 6th day of September 2024.

SANFORD LAW FIRM, PLLC

By: s/ *Sean Short*
Sean Short
10800 Financial Centre Pkwy, Ste. 510
Little Rock, AR  72211

*Attorney for Plaintiffs*