**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Todd Heichel, et al., | No. CV-22-01513-PHX-SMM |
| Plaintiffs, | **ORDER** |
| v. | |
| Tri City Transport LLC, et al., | |
| Defendants. | |

Before the Court is Plaintiff's Motion for Inclusion of Opt-In Plaintiffs in Default Judgment and Plaintiff's Brief for their Motion. (Docs. 54, 55). For the following reasons, the Court grants in-part and denies in-part the Motion.

**I.        BACKGROUND**

Plaintiffs, Todd Heichel, Rudy Castro, Justin Garmendia, Joshua Holgate, and Randi Pitts, brought this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"), the Arizona Wage Act, A.R.S. § 23-353 ("AWA"), and the Arizona Minimum Wage Act, A.R.S. § 23-363 ("AMWA") against Defendants Tri City Transport LLC ("Tri City"), Swwoop LLC ("Swwoop"), and Michael Butler for Defendants' failure to pay sufficient minimum wages and overtime wages. The Complaint alleges that Defendants Tri City and Swwoop are both domestic limited liability companies. (Doc. 1 at ¶¶ 12, 14). The Complaint goes on to allege that the revenue generated by the two companies was merged and managed in a unified manner, with the Defendants operating as a single enterprise. Defendant Butler was the operating employer. (Id. at ¶¶18-21).

Defendants employed the Plaintiffs and paid them per mile driven. (Id. at ¶ 19). Defendants are alleged to have failed to pay Plaintiffs a rate at or close to minimum wage per hour work, failed to reimburse Plaintiffs for mileage expenses at the standard IRS business mileage rate, and failed to pay overtime rates of one and one-half times their regular rate for all hours worked over forty in a week. (Id. at ¶¶ 34,40-53, and 62).

Plaintiffs filed a Notice to join in a collective action for several parties: Cassidy Dorius, Robin Pulis, Courney Haddo, Roscoe Butterfield, Billy Durbin, Karly Hernandez, Domingo Limon, Shavale James Evison, Isabel Van Der Renst, and Pete Young. (Docs. 7; 14; 17; 18; 19; 20; 21; 24; 27; 31).

On August 2, 2023, the Clerk of the Court entered default as to Defendants Swwoop LLC and Tri City Transport LLC, pursuant to Fed. R. Civ. P. 55(a). On February 2, 2024, the Clerk of the Court entered default as to Defendant Michael Butler, pursuant to Fed. R. Civ. P. 55(a).  On September 26, 2025, granted default judgment to Plaintiffs Heichel, Castro, and Garmendia. (Doc. 51). The Court denied without prejudice the Default Judgment as to all parties other than the named Plaintiffs in the original Complaint because the Plaintiffs did not move the Court to allow the Court to consider whether it is proper to include these additional parties in the Default Judgment before it. (Doc. 51). Further, the Court stated that "Plaintiffs may file a Motion with the Court requesting that these additional parties be included as collective action plaintiffs, and if the Court grants that request, move for default judgment as to these additional parties." (Doc. 51). Plaintiffs and Opt-In Plaintiffs timely moved to amend the default judgment[1] and certify the collective action.

## II. Collective Action Certification

### 1. Jurisdiction

The FLSA allows workers to sue jointly for violations of its overtime compensation and minimum wage provisions through a "collective action". See 29 U.S.C. § 216(b). The FLSA collective mechanism is "a kind of mass action, in which

---

[1] The Court is assuming that Plaintiffs move the Court to amend judgment under Fed. R. Civ. P. 59(e).

aggrieved workers act as a collective of individual plaintiffs with individual cases." Campbell, 903 F.3d at 1105; see also Vanegas, 113 F.4th at 725 ("[I]n practice courts treat FLSA collectives as agglomerations of individual claims."). "The maintenance of individual party status makes the FLSA collective mechanism analogous to the mass action at issue in Bristol-Myers." Harrington at 686. Accordingly, personal jurisdiction in collective actions must be "analyzed on an individual basis rather than at the level of the suit." Id.

Here, corporate Defendants Tri City Transport LLC and SWWOOP LLC are registered in Arizona and have their principal places of business in Arizona. Likewise, individual Defendant Michael Butler is a resident of Arizona. Thus, the Court has general jurisdiction. Also, the Court has specific personal jurisdiction over all opt-in Plaintiffs because their claims accrued in Arizona when Defendants failed to properly compensate its drivers for work performed in Arizona. Accordingly, this Court has both general and specific jurisdiction over Opt-in Plaintiffs.

## 2. Similarly Situated

The collective action allows a representative plaintiff to bring suit on behalf of a group of workers who are "similarly situated." See id. The decision to certify a collective action under the FLSA is within the discretion of the Court. Campbell v. City of Los Angeles, 903 F.3d 1090, 1110 (9th Cir. 2018). To certify a collective action under the FLSA, the Court must determine whether the named plaintiff and potential opt-in members are "similarly situated." 29 U.S.C. § 216(b). The FLSA does not define the term "similarly situated," and the Ninth Circuit has not adopted a formal test. See Campbell, 903 F.3d at 1116-1117 (9th Cir. 2018).

For collective action certification, the Ninth Circuit has adopted a two-tiered approach. Id. at 1100-1102; Harrington v. Cracker Barrel Old Country Store, Inc., 142 F.4th 678, 683 (9th Cir. 2025). First, is the notice stage, during which courts determine based on pleadings and affidavits whether a collective action should be certified on a conditional basis. Campbell, 903 F.3d at 1109. Conditional certification requires the plaintiff to make "'substantial allegations,' sometimes as turning on a 'reasonable basis,'

but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." Id. "[T]he proper means of managing a collective action—the form and timing of notice, the timing of motions, the extent of discovery before decertification is addressed—is largely a question of case management and thus a subject of substantial judicial discretion." Harrington, 142 F.4th at 684 (quoting Campbell, 903 F.3d at 1110). At the second stage, after discovery and often precipitated by a motion for decertification by the defendant, the court reevaluates whether the claimants who have consented to sue are indeed "similarly situated." See Id. at 1109. This analysis, which is based on much more information, is subject to a stricter standard. See Id.

However, there is no guidance from the Ninth Circuit on collective actions in default judgment. Therefore, the Court will look at other district courts in the jurisdiction for guidance. See e.g., Tejeda v. Bos. Mkt. Corp., No. CV-23-01497-PHX-JJT, 2023 WL 8810927 (D. Ariz. Dec. 20, 2023); see also Singleton v. Adick, No. CV09-486-PHX-JAT, 2009 WL 3710717 (D. Ariz. Nov. 2, 2009); see also Mancuso v. Tauber, No. CV1210360FMOJCX, 2015 WL 12912321 (C.D. Cal. Sept. 21, 2015). The Court already granted default judgment to the named Plaintiffs. (Doc. 51). Thus, the Court will determine if it grants collective action certification based on the pleadings and affidavits.

"Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Campbell, 903 F.3d at 1117. Plaintiffs argue that collective adjudication is appropriate because Opt-in Plaintiffs worked for Defendants in which they drove individuals to doctor's appointments or delivered medication as requested by Defendants' customers. (Doc. 55 at 6-7). Plaintiffs allege that Defendants did not pay Plaintiffs or Opt-In Plaintiffs an hourly or salary wage, but rather paid Plaintiffs and Opt-in Plaintiffs per mile driven. (Id. at 7). Plaintiffs also allege that Defendants classified Plaintiffs and other drivers as exempt from overtime requirements of the FLSA and did not pay an overtime premium for any overtime hours worked, despite Plaintiffs and Opt-in Plaintiffs regularly working more than 40 hours per week. (Id.) Plaintiffs also allege that Defendants required Plaintiffs and Opt-in Plaintiffs to use their personal vehicles in

making deliveries but failed to reimburse for vehicle expenses. (Id.) Plaintiffs and Opt-in Plaintiffs also submitted three Plaintiff and six Opt-in Plaintiff declarations to demonstrate similarities in the duties performed and the FLSA violations experienced. (Doc. 49).

Here, the allegations in the complaint and the supporting declarations, are sufficient to plausibly allege that the Opt-in Plaintiffs share a similar issue of law or fact material to the disposition of their FLSA claims of unpaid overtime and minimum wage compensation. Accordingly, Plaintiffs and Opt-in Plaintiffs are similarly situated, and the Court will grant conditional collective-action certification under the FLSA.

### III. Damages

The Court previously held that, based on the allegations in the Complaint, that Plaintiffs plausibly alleged an FLSA claim that Defendants are a covered employer, Defendants misclassified Plaintiffs as exempt from the requirements of the FLSA, Defendants failed to pay Plaintiffs both a lawful minimum wage for all hours worked and overtime compensation, and that Defendants did not act in good faith or with reasonable grounds to believe their actions and omissions were not in violation of FLSA. (Doc. 51); see TeleVideo Sys. v. Heidenthal, Inc., 826 F.2d 915, 917-918 (9th Cir. 1987).

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a). "The FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.'" Barrentine, 450 U.S. at 739 (quoting Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 578, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682 (1942), quoting 81 Cong.Rec. 4983 (1937)(message of President Roosevelt). The FLSA requires employers to pay non-exempt workers a minimum wage for any time spent working during the workweek. 29 U.S.C. § 206(a). Also, among the FLSA's central provisions is its requirement that employers pay non-exempted workers at one and a half times the regular rate for any time worked in excess of forty hours in a

single week. 29 U.S.C. § 207; see Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1042 (2016). Additionally, under the FLSA

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (emphasis added). However, in the context of a statute, "or" can sometimes mean "and". See e.g., Pulsifer v. United States, 601 U.S. 124, 144 S. Ct. 718 (2024). Accordingly, following the Supreme Court's interpretation of the FLSA in Barrentine and other cases, the Court finds that Opt-in plaintiffs should be able to recover both minimum and overtime wages. See 450 U.S. at 739.

In addition to overtime and minimum wage compensation, Plaintiffs are entitled to liquidated damages in the amount of the unpaid overtime and minimum wage compensation (i.e. double damages). 29 U.S.C. § 216(b); Chao, 346 F.3d at 919–20; Haro v. City of Los Angeles, 745 F.3d 1249, 1259 (9th Cir. 2014). "When an employer is found liable under the FLSA for failure to pay minimum and overtime wages, the employee is entitled to 'unpaid minimum wages, [ ] unpaid overtime compensation ... and in an additional equal amount as liquidated damages.'" Avila, 2024 WL 863710, at *6 (citing 29 U.S.C. § 216(b) and adding emphasis). "Double damages are the norm, and single damages are the exception." Id., citing Alvarez v. IBP, Inc., 339 F.3d 894, 910 (9th Cir. 2003)). Further, damages are calculated "per-workweek". Douglas v. Xerox Bus. Servs., LLC, 875 F.3d 884, 889 (9th Cir. 2017).

When considering the amount of damages, the Court does not take the factual allegations contained in the Complaint as true. See Geddes, 559 F.2d at 560; TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987). Rather, Plaintiff is required to prove up the damages sought in the Complaint. Philip Morris, U.S.A. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003). Further, "a default judgment must not differ in kind from, or exceed in amount, what is demanded in" Plaintiff's Complaint. Fed. R. Civ. P. 54(c). "In determining damages, a court can rely on the declarations

submitted by the plaintiff or order a full evidentiary hearing." Philip Morris, 219 F.R.D. at 498 (citing Fed. R. Civ. P. 55(b)(2)).

The Court has carefully reviewed the Complaint (Doc. 1) and Opt-In Plaintiffs' Declarations (Doc. 49). In the Complaint, Opt-In Plaintiffs pled for minimum wage and overtime compensation under the FLSA. In support of those claims, Opt-In Plaintiff's submitted declarations alleging that they were not paid minimum wage, overtime, and/or mileage reimbursement. Opt-In Plaintiffs' Declarations included detailed calculations. However, the Opt-In Plaintiffs included calculations for damages under the AWA to include Arizona minimum wage instead of federal minimum wage, calculated treble damages instead of liquidated or double damages, and calculated damages for mileage reimbursement which is not a permitted form of recovery for collective actions under the FLSA. See 29 U.S.C. § 216(b). Thus, the Court recalculated the damages for Opt-In Plaintiffs based on the recovery that is allowed under the FLSA.[2]

The Court will grant damages as follows:

Opt-In Plaintiff Cassidy Dorius claims damages under the FLSA's overtime and minimum wage provisions. (Doc. 49 at Exhibit 8). Opt-In Plaintiff Dorius' Declaration states that she worked for approximately six months between October 2021 and April 2022. Over those months, Dorius worked approximately 80 hours per week and was paid $1,440 per week, except for the last week. Dorius worked 560 hours of non-overtime in 2021 and 470 hours of non-overtime in 2022 and worked 560 hours of overtime in 2021 and 440 hours of overtime in 2022. However, Dorius was already compensated $1,400 each week which is more than the amount she is able to recover based on the federal minimum wage of $7.25 per hour and an overtime rate of 1.5 times the federal minimum wage. Thus, Dorius is only entitled to pay for the 30 hours she worked during the pay period that ended on March 25, 2025. Based on the federal minimum wage of $7.25 per hour, Dorius is owed $217.50. Dorius is also entitled to liquidated (double) damages. Therefore, Dorius will be awarded $435 in liquidated damages for unpaid minimum wage

---

[2] Opt-In Plaintiffs would have been able to recover more damages under Arizona law if they were named plaintiffs instead of opt-in plaintiffs.

compensation. In total, Dorius is entitled to $652.50.[3]

Opt-In Plaintiff Roscoe Butterfield claims damages for unpaid minimum wage compensation under the FLSA. (Doc. 49 at Exhibit 5). Butterfield's Declaration states that he worked for approximately five weeks. Over those weeks, Butterfield worked 33 hours per week and was never paid. Butterfield worked 165 hours of non-overtime, which entitles him to $1,196.25 in damages based on the federal minimum wage of $7.25 per hour. Butterfield is also entitled to liquidated (double) damages. Therefore, Butterfield will be awarded $2,392.50 in liquidated damages for his unpaid minimum wages. In total, Butterfield is entitled to $3,588.75.[4]

Opt-In Plaintiff Karly Hernandez claims damages for minimum wage compensation under the FLSA. (Doc. 49 at Exhibit 6). Hernandez's Declaration states that she worked for approximately eight months between March and October 2022. Over those months, Hernandez worked approximately 35 hours per week and was paid $800 to $880 per pay period except for the month of October. Opt-in Plaintiff Hernandez worked 35 hours of non-overtime per week except for her last week of employment where she worked five hours of non-overtime. Hernandez was already compensated $800 per week for her first 14 weeks of employment and $880 per week for 15 weeks of employment which is more than the amount she would be able to recover based on the federal minimum wage of $7.25 per hour. However, Hernandez was not paid for her last five weeks of employment and worked 145 hours of non-overtime in October 2022, which entitles her to $1,051.25 in damages based on the federal minimum wage of $7.25. Hernandez is also entitled to $2,102.50 in liquidated (double) damages. In total, Hernandez is entitled to $3,153.75.[5]

Opt-In Plaintiff Shavale Evison claims damages under the FLSA for unpaid minimum wage and overtime compensation. (Doc. 49 at Exhibit 4). Evison's Declaration states that he worked for approximately 10 weeks. Over those weeks, Evison worked 60 hours per week and was only paid $800 for his third week of employment. For the weeks

---

[3] Dorius requested $98,283.51 in total damages.
[4] Butterfield requested $20,948 in total damages.
[5] Hernandez requested $7,424 in total damages.

he was not compensated, Evison worked 360 hours of non-overtime and 180 hours of overtime, which entitles him to $2,610 in damages for minimum wage and $1,957.50 for overtime compensation for a total of $4,567.50, based on the federal minimum wage of $7.25 and an overtime rate of 1.5 times the federal minimum wage. Evison will also be awarded $9,135 in liquidated (double) damages. In total, Evison is entitled to $13,702.50.[6]

Opt-In Plaintiff Domingo Limon claims damages under the FLSA for unpaid minimum wage and overtime compensation. (Doc. 49 at Exhibit 7). However, Limon was already paid $3,080 per week for 98 hours worked per week, which is more than he would receive under both Arizona and federal minimum wage and overtime laws. Accordingly, Plaintiff Limon is not entitled to any damages.[7]

Opt-In Plaintiff Billy Durbin claims damages under the FLSA for unpaid minimum wage and overtime compensation. (Doc. 49 at Exhibit 9). Durbin's Declaration states that he worked for approximately 29 weeks. Over those weeks, Durbin worked 60 hours per week and was paid $750 per week for his first 19 weeks. For the 10 weeks he was not compensated, Durbin worked 400 hours of non-overtime and 200 hours of overtime, which entitles him to $2,900 in damages for minimum wage and $2,175 in damages for overtime for a total of $5,075 based on the federal minimum wage of $7.25 and an overtime rate of 1.5 times the federal minimum wage. Durbin will also be awarded $10,150 in liquidated (double) damages. In total, Durbin is entitled to $15,225.[8]

Opt-in Plaintiffs Robin Pulis, Courney Haddo, Isabel Van der Renst, and Pete Young did not submit declarations in support of the hours the individuals worked. The Court has nothing to base a determination of damages on, and, therefore, will deny granting damages to Opt-in Plaintiffs Pulis, Haddo, Van der Renst, and Young. The Court makes this denial without prejudice.

For good cause shown,

**IT IS ORDERED granting in-part and denying in-part** Plaintiffs' Motion for

---

[6] Evison requested $33,062 in total damages.
[7] Limon requested $68,208 in total damages.
[8] Durbin requested $100,711 in total damages.

Inclusion of Opt-In Plaintiffs in Default Judgment. (Doc. 54).

**IT IS FURTHER ORDERED granting** conditional collective action certification.

**IT IS FURTHER ORDERED** that Opt-In Plaintiff Casidy Dorius is entitled to default judgment in the amount of $652.50, for which Defendants Tri City, Swwoop, and Michael Butler shall be liable, jointly and severally.

**IT IS FURTHER ORDERED** that Opt-In Plaintiff Shavale Evison is entitled to default judgment in the amount of $13,702.50, for which Defendants Tri City, Swwoop, and Michael Butler shall be liable, jointly and severally.

**IT IS FURTHER ORDERED** that Opt-In Plaintiff Roscoe Butterfield is entitled to default judgment in the amount of $3,588.75, for which Defendants Tri City, Swwoop, and Michael Butler shall be liable, jointly and severally.

**IT IS FURTHER ORDERED** that Opt-In Plaintiff Karly Hernandez is entitled to default judgment in the amount of $3,153.75, for which Defendants Tri City, Swwoop, and Michael Butler shall be liable, jointly and severally.

**IT IS FURTHER ORDERED** that Opt-In Plaintiff Billy Durbin is entitled to default judgment in the amount of $15,225.00, for which Defendants Tri City, Swwoop, and Michael Butler shall be liable, jointly and severally.

**IT IS FURTHER ORDERED denying** Opt-In Plaintiffs Domingo Limon, Robin Pulis, Courtney Haddo, Isabel Van Der Renst, and Pete Young's request for damages, without prejudice.

**IT IS FURTHER ORDERED directing** Plaintiffs to file any other motions to amend judgment on or before November 20, 2025 pursuant to Fed. R. Civ. P. 59(e).

**IT IS FURTHER ORDERED directing** Plaintiffs to file a motion for attorney fees and costs on or before November 20, 2025 pursuant to LRCiv 54.2.

Dated this 6th day of November, 2025.

_____
Stephen M. McNamee
Senior United States District Judge